# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# LUFKIN DIVISION

| | | |
|---|---|---|
| CARTER PEYTON MEYER | § | |
| v. | § | CIVIL ACTION NO. 9:11cv72 |
| DIRECTOR, TDCJ-CID | § | |

### MEMORANDUM ADOPTING REPORT AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE AND ENTERING FINAL JUDGMENT

The Petitioner Carter Meyer, proceeding *pro se*, filed this application for the writ of habeas corpus under 28 U.S.C. §2254 complaining of the legality of prison disciplinary action taken against him. This Court ordered that the matter be referred to the United States Magistrate Judge pursuant to 28 U.S.C. §636(b)(1) and (3) and the Amended Order for the Adoption of Local Rules for the Assignment of Duties to United States Magistrate Judges.

Meyer was charged with the disciplinary offense of being out of place. He says that he was in front of his own cell, having gone there from work to get some toilet paper. Warden Cook demanded to know what he was doing there and told him that he was going to write Meyer a case for "loitering." Cook also fired Meyer from his job at the commissary. As punishment for the disciplinary case, Meyer received 30 days of commissary restrictions and a reduction in classification status from Line Class I to Line Class II, but did not lose any good time. He did indicate that his calculated parole date had changed from April of 2012 to July of 2012.

In his petition, Meyer contended that the case was "bogus" because he was in his assigned living area during dayroom time. He also complained that Warden Cook fired him from his job without a hearing and that Cook was retaliating against him for being out of place, which he was not.

After review of the pleadings, the Magistrate Judge issued a Report recommending that the petition be dismissed. The Magistrate Judge, citing <u>Sandin v. Conner</u>, 115 S.Ct. 2293, 2301 (1995), concluded that Meyer had not shown the violation of a constitutionally protected liberty interest in the punishments imposed upon him. The Magistrate Judge also stated that Meyer had not set forth a claim regarding being fired from his job because he had no liberty interest in his job, and his claim of retaliation lacked merit because he had no legal right to be out of place, the action for which he allegedly suffered retaliation.

Meyer filed objections to the Magistrate Judge's Report on May 18, 2011. In his objections, Meyer says that "liberty interest or not," the issue was that he was not out of place as defined by TDCJ rules, and so was actually innocent of the charges. He states that the retaliation claim is not related to his being out of place, but because he had been given a job in the commissary. Meyer states that this was confirmed when his mother called the senior warden, Tracy Bailey, who stated that "we were surprised when we returned to the unit [from an in-service meeting] and discovered your son working in the commissary ... on this unit, that job is reserved for more privileged inmates." He says that during his incarceration, he has never had a disciplinary case on any of the seven other units where he has lived, and that he has worked in commissaries on other units. He says that Cook was acting out of retaliation by singling him out, writing him a case, and firing him, later stating that Cook was "retaliating for Meyer being assigned to a job that he, the warden, did not approve."

After reiterating that his conduct record is "impeccable" and that he was not guilty of being out of place, Meyer says that there is an "unwritten rule" that an inmate's first case is always a major one. He speculated that Cook took "personal offense" and used his position to influence the outcome of the case, because wardens don't generally walk around writing disciplinary cases.

As for the issue of a liberty interest, Meyer says, being a mandatory supervision prospect and having a "short way" discharge date does qualify him as having a liberty interest. He says that line class affects time earning rates and that at Line Class II, his "short way" discharge date is later than it would be if he was a Line Class I or higher. At the time of this incident, Meyer says that he had

2

just made State Approved Trusty III, which is a trusty class that "gives the maximum time earning rate allowed," but he received the disciplinary case on the same day that this status was approved. Otherwise, he speculates that he would only have been dropped to State Approved Trusty IV, and not from Line Class I to Line Class II. He says that inmates cannot make parole or "be released on short way" if they are not Line Class I or better.

In conclusion, Meyer asks that the Court consider his argument that he was not out of place, that the disciplinary case was written in retaliation by a junior warden out of spite, and that he has a liberty interest in being released on mandatory supervision, and the date of this release is affected by his time earning rate. He also notes that he did not agree to allow the Magistrate Judge to enter a Report and Recommendation in his case.

Meyer's objections are without merit. The Magistrate Judge correctly determined that Meyer had not shown the deprivation of a constitutionally protected liberty interest in the punishments imposed as a result of this case. The Fifth Circuit has held that the mere opportunity to earn good time credits, as a result of the inmate's classification status, is not a constitutionally cognizable liberty interest sufficient to trigger the protection of the Due Process Clause. Luken v. Scott, 71 F.3d 192, 193 (5th Cir. 1995). Similarly, the Fifth Circuit has stated that the mere fact that a change in classification status could result in a delay in consideration for release to mandatory supervision is too speculative to give an inmate a liberty interest in not being demoted in classification status. In Malchi v. Thaler, 211 F.3d 953, 958 (5th Cir. 2000), the inmate received as punishment in a disciplinary case 30 days of cell and commissary restrictions and a reduction in classification status from State Approved Trusty III to Line Class I. No good time was lost, but prison officials calculated that his projected date of release on mandatory supervision changed as a result of the disciplinary action from November 5, 2000, to May 24, 2001, because of this reduction in time-earning status. Nonetheless, the Fifth Circuit held that "the timing of Malchi's release is too speculative to afford him a constitutionally cognizable claim to the 'right' to a particular time-earning status, which right the Texas legislature has specifically denied creating."

Similarly, the fact that Meyer was reduced in time-earning classification status, resulting in the recalculation of his "short-way discharge date" from April to July of 2012, does not show the violation of a constitutionally protected liberty interest. His claim on this point is without merit.

The Court also notes that Meyer's claim that he was not out of place is in effect an argument that he is "actually innocent" of the disciplinary violation. The Fifth Circuit has held that a free-standing claim of actual innocence does not provide a basis for habeas corpus relief; rather, it is a gateway through which a habeas petitioner must pass in order to have an otherwise barred constitutional claim considered on the merits. Dowthitt v. Johnson, 230 F.3d 733, 741-42 (5th Cir. 2000). This comports with Supreme Court precedent, which holds that claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas corpus relief absent a constitutional violation in the underlying state criminal proceeding. Herrera v. Collins, 113 S.Ct. 853, 860 (1993), *citing* Townsend v. Sain, 372 U.S. 293, 317 (1963). Thus, Meyer's claim of actual innocence does not set out a ground for federal habeas corpus relief.

Nor does Meyer's retaliation claim set out any basis for federal habeas corpus relief. He indicates that Cook gave him the disciplinary case in retaliation for the fact that he had been given a job in the commissary. The Fifth Circuit has held that in order to set out a retaliation claim, a prisoner must allege (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his exercise of that right, (3) a retaliatory adverse act, and (4) causation, which is a showing that but for the alleged retaliatory intent, the adverse act would not have occurred. Jones v. Greninger, 188 F.3d 322, 324-25 (5th Cir. 1999).

In this case, Meyer has failed to show that adverse action was taken against him in retaliation for his exercise of a specific constitutional right. In Tighe v. Wall, 100 F.3d 41, 42 (5th Cir. 1996), a prisoner who worked as an "inmate counsel substitute" contended that he was retaliated against for exercising his First Amendment right of free speech in giving legal assistance to fellow inmates. The Fifth Circuit held that this contention did not set out a valid retaliation claim because inmates have no constitutionally protected interest in a particular work assignment, and the other prisoners

had no right to a particular inmate's help in legal matters. Thus, because there was no violation of a constitutional right, the retaliation claim lacked merit.

In the same way, Meyer had no constitutional right to work in the commissary, and so a disciplinary case given to him because of that assignment was not given in retaliation "for the exercise of a constitutional right." The Magistrate Judge did not err in determining that this claim was without merit. *See also* Jones v. U.S. *ex rel* Department of Justice, 412 Fed.Appx. 690, 2011 WL 573493 (5th Cir., February 16, 2011) (claim that defendants retaliated against prisoner by disciplining him and terminating him from his prison job did not allege the violation of a constitutional right because prisoner's employment was not subject to constitutional protections).

Finally, Meyer complains that he did not agree to allow the Magistrate Judge to enter a Report and Recommendation. The case was referred to the Magistrate Judge for pre-trial purposes, including the entry of a Report and Recommendation, pursuant to 28 U.S.C. §636(b). No consent from the parties is required for a referral pursuant to 28 U.S.C. §636(b). Newsome v. EEOC, 301 F.3d 227, 230 (5th Cir. 2002). This contention is without merit.

The Court has conducted a careful *de novo* review of the pleadings in this cause, including the Petitioner's application for habeas corpus relief, the Report of the Magistrate Judge, and the Petitioner's objections thereto. Upon such *de novo* review, the Court has concluded that the Report of the Magistrate Judge is correct and that the Petitioner's objections are without merit. It is accordingly

ORDERED that the Petitioner's objections are OVERRULED and the Report of the Magistrate Judge is ADOPTED as the opinion of the District Court. It is further

ORDERED that the above-styled application for the writ of habeas corpus be and hereby is DISMISSED with prejudice. It is further

ORDERED that the Petitioner Carter Meyer is hereby DENIED a certificate of appealability *sua sponte*. Finally, it is

ORDERED that any and all motions which may be pending in this civil action are hereby DENIED.

So **ORDERED** and **SIGNED** this **22** day of **June, 2011.**

_____
Ron Clark, United States District Judge